UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
UNITED STATES OF AMERICA,

                  Plaintiff,

-against-

ROBERTO S. GRAHAM, individually and
    d/b/a Tico Dental Laboratories,

ANA CECILIA GRAHAM,

ELENA S. GRAHAM,

WELLS FARGO HOME MORTGAGE,

WELLS FARGO, N.A.,

OCWEN LOAN SERVICING, LLC,

                  Defendants.
----------------------------------------------------------------X

**MEMORANDUM AND ORDER**

13-CV-1288 (WFK) (VMS)

**WILLIAM F. KUNTZ, II United States District Judge**

Plaintiff United States of America ("the Government") commenced this action on March 12, 2013, against Defendants Roberto S. Graham, Ana Cecilia Graham ("Ana"), Elena S. Graham ("Elena"), Wells Fargo Home Mortgage ("Home Mortgage"), Wells Fargo N.A. ("Wells Fargo"), and Ocwen Loan Servicing, LLC ("Ocwen") (collectively, "Defendants").[1] The Government seeks (1) to collect unpaid federal tax liabilities from Defendant Roberto S. Graham, individually ("Roberto") and doing business as Tico Dental Laboratories ("Tico"); (2) to enforce federal tax liens against real property located at 730 East 96th Street, Brooklyn, NY 11236 ("96th Street Property"); and (3) to enforce federal tax liens against real property located at 582 Wyona Street, Brooklyn, NY 11207 ("Wyona Property"). Currently before this Court is the Government's Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The Government seeks summary judgment on the issues of the correctness of

---

[1] Defendants Wells Fargo and Ocwen were included in the amended complaint filed on December 23, 2013, as interest holders in the real property located at 1144 Nostrand Avenue, Brooklyn, NY 11226, one of the properties originally at issue in the action. Dkt. 29 ("Amended Complaint") at 1-2. That property, however, was sold and so has been dismissed from this action. Dkt. 47 ("Voluntary Dismissal of Nostrand Property"). Therefore, this action as against Defendants Wells Fargo and Ocwen is hereby dismissed as moot.

1

the Government's tax assessments, the ability of the Government to attach Roberto's interest in the 96th Street Property, and the ability of the Government to attach Roberto's interest in the Wyona Property. Defendants oppose the Government's motion to dismiss on the basis that the Government's tax assessments are incorrect and on the basis that the extent of Roberto's interest in the Wyona Property is an issue of fact inappropriate for summary judgment. For the reasons set forth below, the Government's Motion for Summary Judgment is DENIED IN PART and GRANTED IN PART.

## FACTUAL BACKGROUND

The following facts are either undisputed or described in the light most favorable to Defendants, the non-moving parties. *See Capobianco v. City of New York*, 422 F.3d 47, 50 n.1 (2d Cir. 2005).

Between 2000 and 2010, a delegate of the Secretary of the Treasury made assessments against Defendant Roberto S. Graham, individually and doing business as Tico Dental Laboratories, for failure to pay federal income taxes, employment taxes, unemployment taxes, penalties, and interest. Dkt. 39-2 ("Pl's Rule 56.1 Statement") at ¶ 1; Dkt. 42-1 ("Defs' Rule 56.1 Statement") at ¶ 1. Based on its assessment, the Government seeks to collect personal income tax liabilities for the tax periods ending from December 31, 2000 to and including December 31, 2008; employment tax liabilities for all quarterly periods from March 31, 2002 to and including December 31, 2010; and unemployment tax liabilities for periods ending from December 31, 2000 to and including December 31, 2004 and again from December 31, 2006 to and including December 31, 2009, as well as penalties and interest (collectively, "the relevant tax periods"). Dkt 39-1 ("Pl's Memo in Support") at 1-2. Between March 16, 2005, and July 26, 2011, the Internal Revenue Service ("IRS") filed twenty-two Notices of Federal Tax Liens for the various tax assessments reported on Forms 941 against Roberto in the Register's Office, Kings County, Brooklyn, New York. *See* Dkt. 39 ("Motion for Summary Judgment"), Ex. 56-78; Defs' Rule 56.1 Statement at ¶4-26. In total, Roberto S. Graham has been assessed as owing

2

$484,718.00 as of December 31, 2013, as well as interest that has accrued since that date. Motion for Summary Judgment, Ex. 55 at ¶6.

In order to satisfy the unpaid tax assessments, the Government is seeking to enforce federal tax liens against two pieces of real property in which the Government alleges Roberto holds an interest. The first property, 730 East 96th Street, Brooklyn, New York 11236, ("96th Street Property") was acquired on June 11, 1981, by Roberto and his wife Ana. Pl's Rule 56.1 Statement at ¶27; Defs' Rule 56.1 Statement at ¶27. The second property, 582 Wyona Street, Brooklyn, New York 11207, ("Wyona Property") was acquired on January 8, 1974. Motion for Summary Judgment, Ex. 81. Roberto and Elena, his younger sister, were both listed on the property deed for the Wyona Property at the time it was acquired. Motion for Summary Judgment, Ex. 81; Motion for Summary Judgment, Ex. 83 at ¶3; Pl's Rule 56.1 Statement at ¶31; Defs' Rule 56.1 Statement at ¶31. Elena stated that she listed Robert as a joint owner of the Wyona Property so that she "could be certain that in the event of [her] death or disability no additional steps would have to be taken by [her] family to transfer title [of the real property]." Motion for Summary Judgment, Ex. 83 at ¶3. Elena further stated that she would have wanted Roberto to own and manage the property in her absence. *Id.*

On February 17, 2010, Roberto transferred his interest in the Wyona Property to Elena for ten dollars. Motion for Summary Judgment, Ex. 82. Elena indicated in her affidavit that Roberto transferred his interest to her to simplify the process of her being able to take out a loan on the property. Motion for Summary Judgment, Ex. 83 at ¶4. Elena also explained that Roberto had never lived at the Wyona property, had never paid taxes on it, and had never received rents from it. Motion for Summary Judgment, Ex. 83 at pg. 3-7. Roberto's statements

3

in his affidavit support this statement of affairs as well. Motion for Summary Judgment, Ex. 83-A.

Presently before this Court is the Government's Motion for Summary Judgment. The Government seeks summary judgment on three grounds. First, it seeks summary judgment on the issue of the value of the tax assessments made against Roberto individually and doing business as Tico. Second, the Government seeks summary judgment on the issue of whether it can attach Roberto's interest in the 96th Street Property as a tenant by the entirety with his wife, Ana, in order to satisfy the tax assessments made against Roberto individually and doing business as Tico. Third, the Government seeks summary judgment on the issue of whether it can attach Roberto's fifty-percent interest in the Wyona Property that he held at the time of the tax assessments as a tenant in common with his sister, Elena, in order to satisfy the tax assessments made against Roberto individually and doing business as Tico. Defendants contest both the value of the tax assessments made against Roberto individually and doing business as Tico as well as whether and what interest Roberto held in the Wyona Property at the time of the tax assessments. The Court will address each issue in turn.

## DISCUSSION

### I. Legal Standard

A court appropriately grants summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). No genuine issue of material fact exists "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 212 (2d Cir. 2001) (quoting *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The moving party must meet its burden by

pointing to evidence in the record, including depositions, documents, affidavits, or other materials which it believes demonstrates the absence of a genuine issue of material fact. *See* Fed. R. Civ. P. 56(c)(1)(A), (2); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "In determining whether summary judgment is appropriate, [the] Court will construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (internal quotation marks and citations omitted). The role of the district court is not to weigh the evidence and determine the truth of the matter, but rather to perform "the threshold inquiry of whether there is the need for a trial[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

If the moving party fulfills its preliminary burden, the burden shifts to the non-movant to raise the existence of a genuine issue of material fact. Fed. R. Civ. P. 56(c)(1). Statements that are devoid of specifics and evidence that is merely colorable are insufficient to defeat a properly supported motion for summary judgment. *See Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999); *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998). "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." *Beyer v. Cnty. of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008) (citing *Guilbert v. Gardner*, 480 F.3d 140, 145 (2d Cir. 2007)).

## II. Analysis

### A. Challenging the Validity of Tax Assessments

The Government may bring an action in district court to obtain a judgment for the amount assessed against the taxpayer. *United States v. Rozbruch*, 28 F. Supp. 3d 256, 263 (S.D.N.Y. 2014) (Gorenstein, Mag. J.) (citing *United States v. Sweeny*, 418 F. Supp. 2d 492, 496

5

(S.D.N.Y. 2006) (Conner, J.)). According to the controlling statute, "[t]he district courts of the United States . . . shall have such jurisdiction . . . to render such judgments and decrees as may be necessary or appropriate for the enforcement of the internal revenue laws." 26 U.S.C. § 7402(a).

"A governing tax assessment is generally presumed to be correct, and a taxpayer who contests such an assessment bears the burden of proving that it is not." *Papandon v. United States ex rel. Perler*, 350 F. App'x 491, 493 (2d Cir. 2009); *see also Rozbruch*, 28 F. Supp. 3d at 263 ("It is well established that the IRS's tax calculations (including calculations of interest and penalties) are presumptively valid and create a *prima facie* case of liability, such that the Government is entitled to have the assessment reduced to judgment unless a taxpayer overcomes the presumption . . . that the assessment is correct.") (internal citations and quotation marks omitted). To rebut this presumption of correctness at the motion for summary judgment stage, a taxpayer "must not only show that the assessment is incorrect, but [he] must also prove the correct amount of tax." *Rozbruch*, 28 F. Supp. 3d at 263 (internal citation and quotation marks omitted). "To create a genuine issue as to the amount of his tax liability, [the defendant] must point to 'specific evidence' that demonstrates the proper amount of his tax liability." *O'Callaghan v. United States*, 943 F. Supp. 320, 327 (S.D.N.Y. 1996) (Baer, J.) (quoting *LaBow v. Comm'r of Internal Revenue*, 763 F.2d 124, 131 (2d Cir. 1985)). "Mere conclusory denials and bald assertions . . . are insufficient to avoid summary judgment." *Id.* (citation omitted).

Here, the Government has provided all of the relevant tax assessments in the form of certified records (Form 4340s) for each of the relevant tax periods. Motion for Summary Judgment, Ex. 1-45. The Government calculated the total for all of the tax assessments amounts to be $484,718.00 as of December 31, 2013, plus any and all interest that has accrued since that

6

date. Motion for Summary Judgment, Ex. 55 at ¶6; *see also* Motion for Summary Judgment, Ex. 46-54 (Form 1040s containing the IRS's interest and penalty calculations). This total assessment amount, as well as the amount of each individual assessment therein provided by the Government, is presumed valid. *See, e.g., United States v. Martynuk*, 13-CV-4110, 2015 WL 328100, at *5 (S.D.N.Y. Jan. 26, 2015) (Polk Failla, J.) (discussing sufficiency of Form 4340s).

Defendants argue that the tax assessments at issue are incorrect, and therefore inappropriate for summary judgment for several reasons. First, Defendants argue that the Government has misstated the tax assessment amount for the tax period ending September 30, 2002 based on the Defendants' reading of the Government's 4340 Form. Second, Defendants argue that the Government has generally misstated the tax assessments against Roberto by failing to deduct the value of seven checks allegedly issued by Tico to the Government from Roberto's tax assessments. Third, Defendants argue that the Government has generally misstated the tax assessments against Roberto by failing to account for nine levy notices issued against the J.P. Morgan Chase Bank account under the name Tico Dental Laboratory USA, Inc. The Court considers each argument in turn.

### 1. Misstatement of Amount for Period Ending September 30, 2002

Defendants contest the assessment for the tax period ending September 30, 2002. Dkt. 42 ("Defs' Memo in Opposition") at 4. According to the Defendant, the tax assessment for the period ending September 30, 2002 should be $413.61, rather than $2,213.61 as the Government claims. Pl's Rule 56.1 Statement at ¶1. To support their argument, Defendants point out that the Certificate of Assessments (Form 4340) that the Government attached to its motion for that time period states the balance of the assessment as $413.61, the Government seemingly having credited $1,800.00 to Defendant Roberto on account of two $900.00 payments. Motion for

Summary Judgment, Ex. 3, at 4. The amount of tax assessment is a material fact, and Defendants have made a showing that there is a factual issue contained within the Government's own evidence. Defendants have also proven the correct amount of the tax – $413.61 – and have pointed to specific evidence *provided by the Government* to demonstrate the proper amount. Therefore, the Government's motion for summary judgment on the tax assessment for the tax period ending September 30, 2002 is DENIED.

### 2. Failure to Credit Defendants for Seven Disputed Checks

Defendants allege that tax assessments for unidentified tax periods are overstated because the Government has failed to credit Roberto, individually and doing business as Tico, for seven disputed checks. Defs' Memo in Opposition at 3-4; Defs' Memo in Opposition, Ex. A at ¶2-9. Defendants allege that the checks were deposited, but the Government denies knowledge of them. Defs' Memo in Opposition at 3. Defendants subpoenaed J.P. Morgan Chase Bank in an effort to obtain copies of the backs of the disputed checks to prove the checks were deposited. Defs' Memo in Opposition, Ex. A at ¶6 (Affidavit of Matthew Ormsbee, Esq.). J.P. Morgan Chase Bank was unable to provide copies of the checks as "they are past the retention period of the firm." *Id.* at ¶7. In the absence of confirmation from J.P. Morgan Chase Bank or from the Government that Defendants checks were deposited, Defendants have provided the subpoena with the list of seven checks (numbers, dates, and amounts) issued by TICO Dental Laboratory, Inc. to the U.S. Treasury to substantiate their claims. Defs' Memo in Opposition, Ex. B at 3. The check dates range from September 12, 2002, to October 3, 2003. *Id.*

This showing is insufficient to defeat the Government's motion for summary judgment because Defendants have not provided any specific evidence suggesting that money was deducted from the referenced account, nor have they provided the Court with a copy of the front

of the disputed checks, which Defendants claim to have sent to the Government. Defs' Memo in Opposition, Ex. A at ¶3 (Affidavit of Matthew Ormsbee, Esq.). Without more than the list of checks on the subpoena which Defendants themselves wrote, Defendants have not pointed to specific evidence to dispute the Government's presumptively valid tax assessments. The list of checks on the subpoena can be considered little more than a "bald assertion" made by the Defendants in their own interest. *See O'Callaghan*, 943 F. Supp. at 327; *see also United States v. Sage*, 412 F. Supp. 2d 406, 415 (S.D.N.Y. 2006) (Keenan, J.) ("Mere speculation is insufficient to defeat summary judgment on the amount [owed]."). Further, Defendants have failed to prove the correct amount of the tax by linking any specific check to any specific tax assessment. Therefore, the Government's motion for summary judgment on the tax assessment for the tax periods between and including September 12, 2002 and October 3, 2003 is GRANTED.

### 3. Failure to Credit Defendants for Nine Levy Notices

Lastly, Defendants allege that the tax assessments for unidentified tax periods must be overstated because the Government has failed to credit Roberto, individually and doing business as Tico, for nine levy notices issued against the J.P. Morgan Chase Bank account under the name Tico Dental Laboratory USA, Inc. Dkt. 42 ("Defs' Memo in Opposition") at 3-4; Defs' Memo in Opposition, Ex. A at ¶2-9. Of the nine notices referenced, only two of the notices that Defendants provided to the Court are issued by the IRS; the others are from the State of New York and are therefore irrelevant to the question of taxes owed to the *federal* government. Defs' Memo in Opposition, Ex. B at 7-31. Evaluating only the levies imposed by the IRS, neither of the levies was imposed until 2011, long after the relevant tax assessments at issue here were made. *Id.* at 20-31. Defendants have not provided any evidence that the tax assessments made

between the beginning 2002 and the end of 2010 should be considered incorrect on the basis of levies imposed months after this period.

In addition, Defendants have failed to prove the correct amount of the assessment. For example, Defendants have provided no evidence of the amount of money that the Government received from Roberto's or Tico's account. *See Sage*, 412 F. Supp. 2d at 415. As a result, they have failed to overcome the presumption of validity afforded the Government's tax assessments. Therefore, the Government's motion for summary judgment on the tax assessment for the tax periods from the beginning of 2004 until the end of 2010 is GRANTED.

B. **Federal Tax Liens Attach to Property Interests**

The Government has also moved for summary judgment on the issue of Roberto's interests in the 96th Street Property and the Wyona Property. 26 U.S.C. § 6321 provides that the amount of unpaid taxes becomes "a lien in favor the United States" against "all property and rights to property, whether real of personal, belonging to such person." 26 U.S.C. § 6321. The lien arises "at the time the assessment is made, and shall continue until the liability for the amount so assessed (or a judgment against the taxpayer arising out of such liability) is satisfied or becomes unenforceable." 26 U.S.C. § 6322. To enforce the lien, "26 U.S.C. § 7403 authorizes the Government to bring a lien-foreclosure suit to collect unpaid [] taxes." *Rozbruch*, 28 F. Supp. 3d at 269 (citing 26 U.S.C. § 7403(a) and *United States v. Rodgers*, 461 U.S. 677, 680 (1983)).

Here, Defendants argue that the liens at issue are invalid as against both properties because Roberto received improper notice and demand from the Government. In addition, Defendants argue that the lien against the Wyona Property is invalid because Roberto never had an interest in the property. The Court considers each issue in turn.

### 1. Notice and Demand

26 U.S.C. § 6303(a) mandates that the Secretary of the Treasury "shall, as soon as practicable, and within 60 days after the making of an assessment of a tax . . . give notice to each person liable for the unpaid tax, stating the amount and demanding payment thereof." 26 U.S.C. § 6303. As with the validity of tax assessments, Form 4340s showing that the IRS issued a "Statutory Notice of Balance Due" on a particular date are "presumptive evidence that the IRS complied with its statutory duties." *Dourlain v. Internal Revenue Serv.*, 06-CV-424, 2008 WL 4605958, at *6 (N.D.N.Y. Aug. 27, 2008) (Mordue, J.) (citations omitted), *aff'd*, 467 F. App'x 229, 230 (2d Cir. 2010) ("[W]e conclude, for substantially the same reasons stated by the district court in its thorough and well-reasoned ruling, that there was no genuine issue of fact as to whether the [IRS] had served [taxpayer] with a 'Notice and Demand,' pursuant to 26 U.S.C. § 6303."); *accord United States v. Lorson Electric Co.*, 480 F.2d 554, 555-56 (2d Cir. 1973) (finding that recitations that notice was sent in the precursor form to Form 4340 might constitute proof of notice under 26 U.S.C. § 6303). A taxpayer challenging the presumption that notice and demand were made must show some evidence to raise an issue of fact. *Dourlain*, 2008 WL 4605958, at *6.

Here, the Government has provided Form 4340s for every one of the relevant tax periods. Motion for Summary Judgment, Ex. 1-45. Each of the Form 4340s contains a line on its first, second, third, fourth, or fifth page indicating at least one date on which a "Statutory Notice of Balance Due" was issued. *Id.*

Defendants have provided no evidence to raise an issue of fact on this claim. Defendants merely allege that the Government has "put[] forth no evidence to substantiate that notice and demand for many of the assessments was properly delivered to Roberto." Defs' Memo in

11

Opposition at 10. This is incorrect as a matter of law, as the existence of at least one "Statutory Notice of Balance Due" line on each of the Form 4340s is "presumptive evidence that the IRS complied with its statutory duties." *Dourlain*, 2008 WL 4605958, at *6. The Government has met its burden, and Defendants have put forth no evidence to rebut the presumption that the IRS complied in all respects with its statutory notice requirements. Therefore, the Government's motion for summary judgment on this issue is GRANTED.

### 2. Property Interests and Tax Liens

"'State law controls whether a taxpayer has an interest in property to which a lien may attach.'" *Rozbruch*, 28 F. Supp. 3d at 269 (quoting *United States v. Comparato*, 22 F.3d 455, 457 (2d Cir. 1997)). Both parties agree that New York law applies. Motion for Summary Judgment at 7; Defs' Memo in Opposition at 11.

#### a) Interest in the 96th Street Property

Under New York law, "a disposition of real property to a husband and wife creates in them a tenancy by the entirety, unless expressly declared to be a joint tenancy or a tenancy in common." N.Y. Est. Powers & Trusts Law § 6-2.2(b). "As tenants by the entirety, both spouses enjoy an equal right to possession of and profits yielded by the property. *Goldman v. Goldman*, 733 N.E.2d 200, 202 (N.Y. 2000) (internal citation omitted). Further, each member of a tenancy by the entirety "may sell, mortgage, or otherwise encumber [his] rights in the property, subject to the continuing rights of the other." *Id.* (internal quotation marks and citation omitted).

In support of its motion for summary judgment, the Government includes the property deed for the 96th Street Property, which indicates that Roberto and Ana, as husband and wife,

purchased the property on June 11, 1981. Motion for Summary Judgment, Ex. 79 (Property deed for 96th Street Property).

Defendants do not contest this fact. Pl's Rule 56.1 Statement at ¶27; Defs' Rule 56.1 Statement at ¶27. Nor do Defendants address the issue of whether Roberto holds an interest in the 96th Street Property as a tenant by the entirety with his wife, Ana, in their opposition to the Government's motion for summary judgment. Accordingly, the Court treats this portion of the Government's summary judgment motion as unopposed. *See Rozbruch*, 28 F. Supp. 3d at 268. When a non-moving party fails to respond to some portion of a motion for summary judgment, the district court must still determine whether summary judgment is warranted on that issue. Fed. R. Civ. P. 56(e); *Fabrikant v. French*, 691 F.3d 193, 215 n.18 (2d Cir. 2012); *Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004).

Since Roberto and Ana purchased the property while they were married, they hold the property as tenants by the entirety under New York law, unless there is an express declaration to the contrary. N.Y. Est. Powers & Trusts Law § 6-2.2(b). Defendants do not provide any evidence of an express declaration that the 96th Street Property was a joint tenancy or a tenancy in common, rather than a tenancy by the entirety. *See id.* Therefore, applying New York law, the Court finds that the 96th Street Property is held by Roberto and Ana as tenants by the entirety. *See id.*

As a tenant by the entirety, Roberto is entitled to encumber his one-half interest in the property, subject to the continuing rights of his wife, Ana. *Goldman*, 733 N.E.2d at 202; *see also Sec. & Exch. Comm'n v. Vuono*, 13-MC-405, 2013 WL 6837568, at *7 (E.D.N.Y. Dec. 26, 2013) (Bianco, J.) (noting that a lien against a tenant by the entirety encumbers that tenant's one-half interest only). Accordingly, the Government may attach Roberto's interest, as a tenant by the

entirety, in the 96th Street Property.[2] The Government's motion for summary judgment on this issue is GRANTED.

### b) Interest in the Wyona Property

Under New York law, the inclusion of more than one person's name on a deed creates a presumptive tenancy in common. *United States v. Sprint Equities NY, Inc.*, 92 F. App'x 841, 842 (2d Cir. 2004). "The distinguishing feature of this form of ownership is the right of each cotenant to use and enjoy the entire property as would a sole owner." *Butler ex rel. Butler v. Rafferty*, 792 N.E.2d 1055, 1058 (N.Y. 2003). Tenants-in-common "may each unilaterally alienate their shares [of the property] through sale or gift or place encumbrances upon these shares." *United States v. Craft*, 535 U.S. 274, 280 (2002). Further, under federal law, federal tax liens placed on a property are not extinguished simply because the individual who owes the tax transfers his interest in the property to another. *See United States v. McCombs*, 30 F.3d 310, 321-22 (2d Cir. 1994) (noting that the priority and existence of federal tax liens are matters of federal, rather than state, law).

Tenants-in-common are "presumed to hold equal shares in the premises they own." *Sprint Equities NY, Inc.*, 92 F. App'x at 842 (citation omitted). This presumption "may be rebutted if the facts show that they hold the tenancy in unequal shares." *McGuire v. McGuire*, 939 N.Y.S.2d 572, 574 (2d Dep't 2012). Facts to be considered to determine if the presumption has been rebutted involve the "various equities," including specifically the "amounts invested in the property," "the nature of the parties' relationship, and whether any or all of these

---

[2] The Court makes no findings in regards to the relative superiority of Home Mortgage's $154,000.00 mortgage on the 96th Street Property, recorded on November 22, 1989, versus the Government's tax lien on the 96th Street Property because this issue was not raised in the Government's motion for summary judgment. *See* Dkt. 35 ("Home Mortgage Answer") at ¶2; Motion for Summary Judgment; Dkt. 43 ("Government's Reply").

contributions were repaid or intended to be a gift." *Id.* (citations omitted); *see also Manganiello v. Lipman*, 905 N.Y.S.2d 153, 155-56 (1st Dep't 2010) (finding that one party's allegations that she alone contributed to property's maintenance and upkeep after the other party's voluntary departure rebutted the presumption that the parties held in equal shares). The fact that one cotenant did not live at the property is not properly considered by the Court because "each cotenant has an equal right to possess and enjoy all or any portion of the property as if the sole owner. Consequently, nonpossessory cotenants do not relinquish any of their rights as tenants-in-common when another cotenant assumes exclusive possession of the property." *Myers v. Bartholomew*, 697 N.E.2d 160, 161 (N.Y. 1998). Instead, New York law "presumes a cotenant's possession is possession by and for the benefit of all other cotenants." *Id.* (citation omitted).

If a party rebuts the presumption of equal shares, then determination of the value of each cotenant's share is made by the Court acting in equity. *McGuire*, 939 N.Y.S.2d at 574. This determination is "not amenable to resolution by summary judgment." *Manganiello*, 905 N.Y.S.2d at 155-56.

In support of its motion for summary judgment, the Government includes the property deed for the Wyona Property, which indicates that Roberto and Elena, brother and sister, purchased the property on January 8, 1974. Motion for Summary Judgment, Ex. 81 (Property deed for Wyona Property). Defendants do not dispute that Roberto and Elena are presumptively tenants-in-common of the Wyona Property because both of their names were on the property deed. Defs' Memo in Opposition at 11; Pl's Rule 56.1 Statement at ¶31; Defs' Rule 56.1 Statement at ¶31; Motion for Summary Judgment, Ex. 81 at 1. Thus, if Roberto is found to have held an interest in the Wyona Property as a tenant-in common at the time the tax assessments

were made against him, the Government would be able to enforce a lien against Roberto's interest. *See McCombs*, 30 F.3d at 321-22.

The existence of both Roberto's name and his sister Elena's name on the deed for the Wyona Property creates a rebuttable presumption that the two held the property in equal shares as tenants-in-common. *See Sprint Equities NY, Inc.*, 92 F. App'x at 842. In an effort to counter any rebuttal to the presumption, the Government includes in its motion an Indenture, signed by Elena and Roberto on February 17, 2010, in which Roberto transfers his interest in the Wyona Property to Elena for $10. Motion for Summary Judgment, Ex. 82. The existence of this Indenture suggests that the parties believed themselves to have been in a cotenant relationship prior to Roberto selling his interest to his sister. Defendants, on the other hand, attempt to rebut the presumption by providing an affidavit from Elena stating, and numerous pieces of evidence in an effort to show, that Elena paid all of the purchase expenses in 1974, has paid all of the maintenance and upkeep costs on the property since then, and has paid all of the taxes and insurance costs on the property. Defs' Memo in Opposition, Ex. D ("Elena's Aff.") at 3-7 & Ex. B-Z.

Viewing the evidence in the light most favorable to Defendants as the non-moving party, Defendants have provided enough evidence to create an issue of material fact on the question of whether and what percentage interest Roberto held in the Wyona Property as a tenant-in-common with his sister, Elena. This question is inappropriate for resolution at the summary judgment stage. *See Manganiello*, 905 N.Y.S.2d at 155-56. Thus, the Government's motion for summary judgment on the issue of Roberto's attachable interest in the Wyona Property is DENIED.

## CONCLUSION

Accordingly, on the basis of the record and law as set forth above, the Government's motion for summary judgment is GRANTED as it relates to all tax assessments other than the tax assessment for the tax period ending September 30, 2002. The Government's motion for Summary Judgment is also GRANTED as it relates to Roberto's interest as a tenant by the entirety in the 96th Street Property. The Government's motion for summary judgment is DENIED as it relates to the tax assessment for the tax period ending September 30, 2002. The Government's motion for Summary Judgment is also DENIED as it relates to Roberto's interest in the Wyona Property.

**SO ORDERED**

Dated: March 5, 2015
      Brooklyn, New York

s/WFK

HON. WILLIAM F. KUNTZ, II
United States District Judge